ALLEN, Judge.
The appellant, plaintiff below, appeals from a final decree which held that a certain piece of property located within a municipality was homestead property to the extent of one-half acre. The decree further held that said property, known as the “Tyrone Property,” was exempt from execution and sale to satisfy a judgment, which the appellant, The Heil Company, had secured against the appellee, defendant below.
We deem the essential facts in this case to be as set forth by the circuit judge in his final decree. Neither the appellant nor the appellee has challenged the factual situation set forth in said decree. The appellant, however, does raise the question as to whether the circuit judge, under the factual situation, should have permitted a levy and execution on the homestead property claimed by the appellee.
The facts appearing in said decree are as follows:
“1. The Plaintiff is a large manufacturer of truck bodies and equipment; the defendant is the sole proprietor of a *22 St. Petersburg company installing plaintiff’s products on trucks and repairing trucks.
“2. Defendant, since 1957, and at all times material hereto, was a franchised agent of the plaintiff, during which, from time to time, defendant submitted various periodic financial statements to plaintiff for purposes of maintaining his agency and his credit with plaintiff.
“3. For some time prior to April of 1961, defendant’s credit with plaintiff had deteriorated, to some degree, and, while his account had theretofore been carrying an $18,000 to $20,000 debit balance, he was on a cash basis for some time prior to the said April 1961 date.
“4. At, or prior to, April 1961, the plaintiff and defendant had entered into a special agreement at a time when defendant was bidding on a special contract with the City of St. Petersburg to furnish it 5 garbage trucks. This special agreement between plaintiff and defendant provided that, in this one instance, the cash basis of negotiations between them would be suspended, and plaintiff would furnish the necessary truck equipment without any payment therefor from defendant in consideration of the defendant’s promise to forward the purchase price of the garbage trucks, less any profits to defendant, immediately upon receipt thereof from the City of St. Pe-tersburg. Delivery of the equipment was made from plaintiff to defendant between April of 1961 and June of 1961, and complete payment therefor was made by the City of St. Petersburg to the defendant, on or prior to July 1, 1961. Of the total purchase price, in the approximate amount of $21,000 payable to plaintiff, the defendant forwarded only the sum of approximately $12,900.
“5. Because of the large debit balance in the account between them, and on account thereof, on May 20, 1960 defendant executed 9 promissory notes, and on July 20, 1960 a 10th promissory note, all in a series, payable to the plaintiff. These notes were to be payable in the sum of $1,500 each, and each note in the series was to mature on successive months at the rate of one a month.
“During this period of time, that is, from 1960 through June of 1961, defendant’s business was operating at a net loss, as evidenced by the various financial statements submitted by him to plaintiff.
“6. Prior to the foregoing ‘special’ transaction in the spring of 1961, and as listed in the aforesaid financial statements rendered by the defendant to plaintiff, defendant had claimed certain real estate, hereinafter called the ‘Tyrone Property’ (being slightly more than one-half acre in size), as an asset. Further, at or prior to that time, defendant was living with his wife and children in their homestead, hereinafter called the ‘Villa Grande’ property.
“7. At all times material hereto, and to the present time, defendant had only one single bank account in his name into which all monies received by him, either through business or otherwise, were deposited, and out of which all expenditures, both business and personal, were made.
“8. On and after September 1961, defendant negotiated with various lending institutions and constructed a building on the ‘Tyrone Property.’ The actual cost of the building put on the ‘Tyrone Property’ exceeded $31,000, according to defendant’s own statement of costs. Defendant states that he secured a $15,000 construction mortgage from a Federal Savings and Loan Association, borrowed $3,000 cash on a signature note to a bank, and that the balance of the cost of construction was arranged by various suppliers, material men and/or sub-contractors working off accounts payable which they owed to defendant. Testimony in this regard is extremely vague and un *23 certain as to amounts and/or contributors, and nothing of certainty has been shown by a preponderance in regard thereto.”
The “Tyrone Property” was a commercial building consisting of a showroom, offices and garage. A second story was constructed on a portion of the building into which the defendant moved and resided after separating from his former wife and his family in the early part of 1962.
The court held that in effect a debtor-creditor relation existed between the appellant and the appellee and that the transaction involved was not a trust arrangement. There was no proof that the money paid in to the defendant below was used in constructing the homestead property, called the “Tyrone Property.”
The defendant had resided in the “Tyrone Property” from the early part of 1962 until March 11, 1964, at which time the plaintiff filed an action to recover sums due and payable on various notes which were owed to the appellant. A judgment was obtained in that action on September 4, 1964, in the amount of $44,457.45, together with costs.
While the above action was in progress, the defendant filed suit for divorce against his wife and the parties executed a separation agreement which was incorporated in the final decree of divorce, entered June 24, 1964. Title to the “Villa Grande” property was transferred by the defendant-ap-pellee to his first wife and all title and interest in the “Tyrone Property” was vested in the appellee.
After the decree of divorce was entered, the defendant remarried and he and his new wife lived in the “Tyrone Property.”
The defendant executed a note to his present wife in the sum of $1,300, which was pre-dated, and secured said note by a chattel mortgage on 7 pieces of business equipment. The lower court, however, in its final decree above referred to, set aside the note and chattel mortgage above mentioned. After the divorce of the defendant and the transfer of the “Villa Grande” property to the defendant’s first wife, the “Villa Grande” property was no longer the homestead property of the defendant. After his marriage to his present wife, the “Tyrone Property” became, in fact, the homestead property of the appellee.
The plaintiff has not disputed that the appellee-defendant was living on the “Tyrone Property” approximately two years prior to the plaintiff filing the suit resulting in the judgment, which is sought to be enforced in the action below.
The appellant urges that the “Tyrone Property” was not totally homestead since it is not all “residence and business house” of the defendant.
In the case o'f Cowdery v. Herring, 1932, 106 Fla. 567, 143 So. 433, a situation existed very similar to the instant case. A paint shop and garage, which was built on urban homestead land, and revenue of which constituted the widowed homesteader’s principal means of livelihood, was held exempt from execution as a business house as within the constitutional limitation of Art. 10, § 1 of the Florida Constitution, F.S.A.
The Court, in its opinion, said: (p. 435)
“The term ‘business house’ is not defined in the Constitution relating to urban homestead exemptions, but it is plain that the intendment is to preserve as exempt a reasonable portion of the homestead improvements, in addition to the owner’s actual residence, when it appears that the improvements concerned are being used as a means of making the owner’s livelihood.
“Here the garage and paint shop in effect constitute a portion of the widowed homesteader’s ‘business house’ under the circumstances, because it was not already shown that the widow, upon whose homestead land these rented structures *24 were located, had any other real ‘business house.’ On the other hand, it was shown that Mrs. Cowdery depended principally upon the rents from these structures as her means of living.”
In the second case of Cowdery v. Herring, 1932, 106 Fla. 567, 144 So. 348, the Court said:
“That the land involved and held exempt was the homestead and that it did not exceed one-half acre is admitted. The burden was accordingly upon the judgment creditor to show clearly by competent proof that there were ‘more improvements or buildings’ on the exempt land than ‘the residence and business house’ of the owner, Mrs. Cowdery.”
In White v. Posick, Fla.App.1963, 150 So.2d 263, this court held that a garage and overhead apartment located to the rear of judgment debtor’s one-story dwelling house, which was located on a less than one-half acre parcel in a municipality, was a portion of the homestead and exempt from execution sale. This was true even though such separate buildings were used for storage and laundry room facilities rather than for rental purposes.
This court, speaking through the late Judge White, referred to the case of Union Trust Company v. Glunt, Fla. 1956, 85 So.2d 877, 878, in which case Justice Terrell, writing the opinion for the Supreme Court, said:
“ ‘We think the chancellor correctly held that the case at bar was ruled by Cowdery v. Herring, supra [106 Fla. 567, 143 So. 433, 144 So. 348]. Since the homestead was within the limits of a city or town, the real point with which we are confronted is whether or not the improvements on the land in question amounted to more than the “residence and business house of the owner” ? What constitutes the “residence and business house” of the owner is not defined in the Constitution but in Cowdery v. Herring, supra [106 Fla. 567, 143 So. 435], we said that the intent of this language was to “preserve as exempt a reasonable portion of the homestead improvements, in addition to the owner’s actual residence, when it appears that the improvements concerned are being used as a means of making the owner’s livelihood.” One’s business, trade, craft or other means by which he made his living might have much to do with determining what constituted his “residence and business house.” ’ ”
We conclude that the lower court correctly ruled that the “Tyrone Property” was the homestead of the appellee, and should be affirmed.
Affirmed.
LILES, C. J., and PIERCE, J., concur.